*316 AMENDED OPINION
DOUGLAS NASH, Justice.

Procedural History

This case came before the Court of Appeals pursuant to the Notice of Appeal filed by Petitioner D.B. on March 28, 2014. Following requests for extension of time, briefing, and oral argument, this Court issued its original Opinion, with the dissenting Opinion of Justice Smith, on February 9, 2015. On February 19, 2015, bedaTchelh filed a motion for reconsideration suggesting that the majority Opinion had misapprehended certain facts in the trial court record. bedaTchelh did not request the Court to reconsider its analysis or holding. On February 26, 2015 Appellants filed a response asking this Court to deny the motion for reconsideration based on time considerations and bedaTchelh’s failure to file a response to Appellant’s opening brief on the merits. In light of these developments, the majority now issues this amended Opinion.

Background

The child who is the subject of this guardianship proceeding was the subject of a Youth in Need of Care case opened in November, 2011. The child was originally placed in the temporary custody of his maternal grandmother on November 3, 2011. On November 8, 2011, bedaTchelh filed a Declaration of Emergency Change of Placement and on the next day the child was placed with his paternal grandparents because they lived on the Tulalip reservation and the maternal grandmother did not. GAL Report p. 3. The maternal grandmother had no visitation rights until December 22, 2011 when the court issued an order establishing a visitation schedule for four specific days. An incident occurred on December 27, 2011, in which the paternal grandparents took the child to his parents’ residence in their car. The paternal grandparents attempted to get the child’s mother to leave with them before the police arrived to investigate the domestic violence that had occurred there. GAL p. 5. As a result, the child was placed with his maternal grandmother again where he remained for the next 18 months. In August, 2013, the child was removed from the maternal grandmother’s custody because she allowed the parents to have a supervised visit with the child and the child was placed again with the paternal grandparents. Although it was later reported to bedaTchelh that the paternal grandparents had allowed the child’s father to be with his son in June, 2013, bedaTchelh did not change the placement. Four months after the child tested positive for four different drugs while in the custody of the paternal grandparents (see discussion below), bedaTchelh moved, unsuccessfully, to have the child placed with a 19 year old relative of the maternal grandmother. At some point thereafter, the child was placed back with his paternal grandparents.
Both the maternal grandmother and paternal grandparents petitioned for guardianship. A Guardian ad Litem (GAL) was appointed by order of the court on September 12, 2013, and was charged with recommending which of the parties should be appointed as guardian. 2nd order dated September 12, 2013. The GAL’s eighteen page sealed report and six page public report were submitted on December 2, 2013. It was the conclusion of the GAL that the child should be placed with the maternal grandmother, and that the paternal grandparents be granted visitation one weekend per month. After a trial that began on December 18, 2013 and concluded on February 12, 2014, the court granted both petitions and divided custody between *317 the parties.[1] Findings of Fact, Conclusions of Law and Order on Guardianship (hereinafter also “FFCL”), March 10, 2014.
The maternal grandmother appeals from the court’s order.[2]

Standard of Review

The Tulalip Tribal Code sets forth our standard of review at TTC 2.20.090. The provisions relevant to this appeal are:
(1) A finding of fact by a Judge shall be sustained unless clearly erroneous;
* * *
(3) Any finding by the Judge, whether explicit or implicit, of witness credibility shall be reviewed as a finding of fact;
* * *
(8) A matter which is within the discretion of the Tribal Court shall be sustained if it is reflected in the record that the Tribal Court exercised its discretionary authority, applied the appropriate legal standard to the facts, and did not abuse its discretion. A matter committed to the discretion of the Tribal Court shall not be subject to the substituted judgment of the Court of Appeals.

The Best Interests of the Child

The appointment of a guardian shall be governed by the best interests of the youth who is the subject of the guardianship.[3] TTC 4.05.370(l)(b)(v). This is the primary criteria to be applied when deciding who shall be appointed guardian of a child notwithstanding other factors, including those listed in TTC 4.05.370(( )(b)(i).[4] While this “order of preference for appointing a guardian” subsection precedes the mandate that the appointment be governed by the best interests of the child, it does not supersede it. Therefore, reliance by the trial court upon the “order of preference” factors as decisive, including the on reser *318 vation residence of the paternal grandparents and off reservation residence of the maternal grandmother, is misplaced. The trial court stated that its decision would be based upon the best interests of the child even though implying that would not be the case if the petitioners did not both have some factors in their favor. “Although in summary fashion, it should be noted that some factors weigh in favor of each Petitioner so the deciding factor will be the best interests of the minor child.” FFCL and Order on Guardianship Petitions, p. 3. However, the trial court reached its decision contrary to the only independent evidence before it regarding the best interests of the child.

Guardian ad Litem (GAL)

The function and purpose of a Guardian ad Litem (GAL) is “... to represent a child, for the protection of the best interests of the child ...” TTC 4.05.020(24). It would usually be the function of beda?chelh to advise the trial court which placement of a child would be in the best interests of that child. TTC 4.05.370(4)(c). For whatever reason, bedatchelh refused to do that in this case, reporting only that both parties were “eligible.” Wé are not persuaded by beda?chelh’s argument on reconsideration that reporting that both of the competing petitioners were “eligible” constitutes a “recommendation regarding the legal guardianship” for purposes of TTC 4.05.370(4)(c). Where there are competing petitions, “either” is not a recommendation. We conclude that in the case of competing petitions, TTC 4.0a.370(4)(c) requires beda?chelh to recommend which of the competing petitions for guardianship would best serve the interests of the child and explain its reasoning, regardless of whether it is an easy choice or a close call.
The GAL was appointed in this case for the specific purpose of recommending who should be appointed as guardian because the court had to make a choice without the benefit of a recommendation from beda?chelh. Order on Hearing, September 12, 2013. The GAL report, dated December 2, 2013, is detailed and identifies all of the people contacted and interviewed, all of the factors that went into her recommendation that the maternal grandmother be made the child’s guardian, and recommendations for follow-up for the benefit of the child.
The trial court chose to disregard the GAL recommendation without any discussion or acknowledgement of the content of the GAL report, some of which has extremely serious bearing on the best interest of the child. For example, the GAL reports that the child tested positive for methamphetamine, MDMA, morphine and 6-MAM after hair follicle tests were conducted at the request of the maternal grandmother and after the child had been at the paternal grandparents’ home for five months.[5] GAL p. 6.
The test results of the paternal grandparents are not known because the court did not allow discovery of those results by the maternal grandmother. Appellant’s Brief, p. 6. The paternal grandparents did testify that they had their own home tested and it tested positive for methamphetamine in three rooms. Id. Based upon the positive test results of the child, the court ordered that all family members living in each of the homes where the child had lived submit hair samples for testing. Id. While all persons living in the paternal grandparents’ home (nine in total—GAL p. *319 4) were to be subjected to testing, none, other than the paternal grandparents, were tested because the paternal grandmother required that they leave her home before the testing could be conducted. GAL p. 7. The paternal grandparent’s son (the child’s father) and their daughter have a history of drug use (GAL p, 7) and the son continues to live at their house. GAL p. 15. None of the foregoing factors were even mentioned by the trial court in its decision. The response of the paternal grandparents to these and the several other aspects of the GAL report which reflect negatively upon them is to challenge and deny, question the competence and impartiality of the GAL, and call for her removal all without ever offering any evidence to support their claims.
The maternal grandmother has no such history beyond her daughter, mother of the child, having a history of drug abuse (GAL p. 3), but not during anytime she lived with her mother. Nothing in the record suggests the child was ever exposed to illegal drugs or drug use while with the maternal grandmother.
There are several other factors that bear directly on the wellbeing of the child contained in the GAL report that were either dismissed or not considered by the trial court after it concluded that the report would not be afforded the same weight as a recommendation from beda?chelh.
Stability—the GAL report emphasizes that the structure in place at the time of her report of having the child 3 days in one place and 4 in the other makes the situation worse, that he has been displaced many times (note that beda?chelh has been responsible for or involved in at least six different changes in placement up to this point in time over the 3½ years the child has been alive), he lacks consistency and stability and has experienced separation anxiety many times. GAL p. 16. There are references throughout the GAL report to the significant differences in each petitioner’s approach to fundamental child rearing issues such as toilet training, naps, bedtimes, television, and discipline. Yet the trial court, without any supporting evidence, concludes that the best interests of the child and his stability favors the continued shared custody of the child between both guardians, FFCL 4. The trial court noted that “normal” for this child is to reside with both grandparents regardless of which is deemed to have “residential” placement” without giving consideration to whether that “normal” is in the best interests of the child. The GAL report noted that several collateral individuals interviewed commented on the lack of stability in the child’s life. GAL p. 14. The concluding paragraphs of the GAL report emphasize the child’s need for “stability” and “to have one constant home where he can be nurtured and cared for with the least amount of disruption.” GAL p. 18.
The GAL also made several recommendations regarding follow-up care for the benefit of the child in conjunction with her placement recommendation. None of these were mentioned by the trial court and several seem critical to the wellbeing of the child including:
The child shall be placed into therapy with a qualified professional. Any and all recommendations of Ms therapist shall be followed.
The child should be assessed for Fetal Drug and Alcohol at the University of Washington to determine whether or not this child has ongoing issues resulting from drug and alcohol abuse.
Despite the paternal grandparents’ family having a history of drug use and abuse, the trial court made no provision in awarding them guardianship to protect the child *320 from further exposure to illegal drugs and drug use.

Weight to be Given to GAL Report

Appellant argued before the trial court that the GAL report should be accorded the substantial legal weight accorded to beda?chelh by the TTC. The trial court disagreed, stating that “The Court disagrees with granting this substantial favor to a party NOT necessarily representing the Tribe or the Tribe’s interest.” FFCL & Order, p. 3 (emphasis in original). In so stating, the trial court disregards the facts that the base criteria for its decision is the best interest of the child, that the sole function of the GAL is to represent those interests and that the GAL was appointed because beda?chelh, the agency charged with representing the best interests of the child, abdicated its obligation under TTC 4.05.370(4)(c) to make a recommendation.[6] The trial court’s reference to the GAL as a “party” is telling. The GAL is not a “party.” Pursuant to TTC 4.05.020(24), the GAL is the child’s legal representative. We need not resolve the question whether the GAL’s recommendation should have been accorded the same weight as one from beda?chelh,[7] The trial court was clearly not at liberty to disregard the facts and recommendations submitted by the child’s legal representative.
The trial court stated that the GAL report “... is a substantial legal factor in favor of [the maternal grandmother], it does not give the mandatory preference accorded to the report under the statute.” The trial court’s reasoning was that:
beda?ehelh has a unique status in the Code which does not apply to the guardian ad litem’s recommendations without a more specific designation from the Tribe. This Court would require that if beda?chelh intended to designate another person or agency be granted this special statutory preference that it must do so explicitly and preferably in writing. In this matter, the Court does not find that the guardian ad litem’s recommendation is entitled to the same legal weight as a beda?ehelh recommendation.
In light of beda?chelh’s refusal to make a recommendation to the court in this case, its status in the Tribal Code is irrelevant here. There is nothing in the Tribal Code that authorizes beda?ehelh to transfer its responsibilities and authorities to another person or agency whether explicitly or in writing or otherwise. Further, beda?ehelh has a history of inconsistencies in this case as reflected by the numerous changes in the placement of the child, alleged disparate treatment of the grandparents after each facilitated an unauthorized visit between their respective child and the grandchild, and, in the course of this case, initially saying that in the matter of breaking the tie choosing between the grandparents, . that is the function that beda?chelh has deferred to the guardian ad litem.” August 6, 2014, Brief for Appellant, p. 9. beda?ehelh stated at oral argument before this Court that that was not its position on *321 the matter, but in its motion for reconsideration, counsel for beda?ehelh acknowledges stating in a colloquy with the trial judge that “As to whether beda?chelh is sort of breaking the tie and calling one side over the other or not, that is the function that beda?chelh has deferred to the guardian ad litem.” Once beda?chelh declined to make a recommendation as to which of the competing petitions for guardianship would best serve the interests of the child as required by the TTC, beda?chelh’s position upon the placement of the child and how it viewed the role of the GAL became irrelevant for purposes of this appeal.
Whether beda?ehelh could or did delegate its authority and whether the GAL report is entitled to the same status as one submitted by beda?chelh are not the issues in determining the appropriate guardianship in this case. The focus on these issues ignores the best interests of the child as the determinative factor mandated by the Tribal Code. The GAL was appointed because the court had no guidance from beda?chelh regarding which of the competing petitions for guardianship would best serve the interests of the child. The primary obligation of the GAL was to represent the best interests of the child. The GAL undertook an extensive study before making her recommendation and her recommendation is the only independent evidence of the best interests of the child the trial court had before it. It was, therefore, error on the part of the trial court to disregard the GAL report and recommendation on the grounds stated in the FFCL. Conclusion
We agree with the dissent in regards to the respective roles of the Court of Appeals and the trial court, and the deference due to the trial court’s determinations of witness credibility and findings of fact. However, just as a guardian ad litem is not a “party,” neither is a guardian ad litem a “witness.” Therefore, the command of TTC 2.20.090(3) that we defer to the trial court’s determination of witness credibility as a finding of fact is inapplicable here. Likewise, the command of TTC 2.20.090(1) that we sustain a finding of fact by the trial court unless it is clearly erroneous is not the applicable standard here because our concern is that the trial court’s failure to address the evidence and recommendations presented by the GAL overrides whatever findings the trial court did make. The applicable standard of review here is set forth at TTC 2.20.090(8), where we are instructed to sustain a matter within the discretion of the trial court only if the trial court applied the appropriate legal standard to the facts. We hold that because the trial court did not apply the appropriate legal standard to the GAL’s report and recommendations, the trial court abused its discretion.
The trial court erred by disregarding and dismissing the GAL report and recommendations on the grounds that it was not entitled to the same weight as a recommendation from beda?chelh would be given. While we do not decide whether the GAL’s recommendation is entitled to the same weight as one from beda?chelh, we do hold that the GAL’s recommendations deserved substantially more weight than they were given by the trial court. The trial court further erred by disregarding the only independent evidence of what constituted the best interests of the child. The trial court also erred by granting guardianship without making written findings as to whether there is clear and convincing evidence that the guardianship is in the best interests of the child. TTG 4.05.370(7). The decision of the trial court placing guardianship with the paternal grandparents is reversed and this matter remanded back to the trial court for fur *322 ther proceedings consistent with this opinion.
IT IS SO ORDERED.
NASH, J., in which J. NASON concurs.

. The governing section of the Tulalip Youth Code, TTC 4.05.370, refers almost exclusively to “a guardian" or "the guardian” in the singular, suggesting that the code generally anticipates that a single individual will be appointed guardian. The primary exception is that the Code recognizes that multiple “petitioner(s)" may join in a single petition for guardianship. TTC 4.05.370(2)(a)(i)(B). We find nothing in the Code that authorizes the trial court to create a dual or shared guardianship between competing and potentially adverse petitioners. Because this issue was not raised or briefed by the parties, we note it for consideration by the trial court on remand, but do not decide it here. Nothing in this Opinion should be construed as restricting the trial court's authority to grant a single petition for guardianship while also awarding visitation to another petitioner if such visitation is found to be in the best interests of the child pursuant to TTC 4.20.460,

. On April 2, 2014, the paternal grandmother filed a "Response to Guardianship Order” that addresses certain matters the trial court had set for a subsequent hearing in its March 10 Order. This "Response" does not purport to be a notice of appeal, and even if it did, it would not have been timely filed,

. In furtherance of this mandate, the recommendations of beda?chelh, the Tribes' presumptively independent and neutral child welfare agency, “shall be heavily favored as in the best interest of the child.” TTC 4.05.370(l)(b)(vii).

. TTC 4.05.370(1 )(b)(i): The order of preference for appointing a guardian, in the absence of good cause to the contrary, shall be:
(A) A person who was indicated by the wishes of a deceased parent as indicated in a will or similar instrument;
(B) Family members;
(C) Extended family members;
(D) A member of the Tulalip Tribes living on or near the Tulalip Reservation;
(E) A member of another Indian tribe residing on or near the Tulalip Reservation;
(F) A member of the Tulalip Tribes residing off the Tulalip Reservation; or
(G) A member of another Indian tribe residing off the Tulalip Reservation.

. MDMA is commonly known as ecstasy, www.drugabuse.gov. 6-MAM is created from heroin in the body and is a definitive indication of heroin use. www. mayomedical laboratories.com.

. TTC 4.05.370(4)(c) states that: (4) Upon receipt of a petition for legal guardianship, beda?chelh shall investigate any party to be appointed as legal guardian, conduct a complete home study, and shall prepare and submit a written report to the court ... (c) The report shall contain beda?chelh's recommendation regarding the legal guardianship, and whether beda?chelh believes that the legal guardianship will be in the best interests of the child. (Emphasis supplied.)

. Indeed, an argument could be made that as the child’s legal representative, a GAL’s recommendations deserve more weight than recommendations from beda?chelh. It is unfortunate that Appellant and the trial court focused so heavily on the relationship between the GAL and beda?chelh instead of focusing on the role of the GAL as defined by the Youth Code.